# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

KIMBERLY MYERS, Individually )
and as Plaintiff Ad Litem on behalf of )
BRANDON MYERS, )
    600 S.W. Shadow Glen Drive )
    Blue Springs, MO 64015 )
and )
     )
RANDY MYERS, Individually )
and as Plaintiff Ad Litem on behalf of )
BRANDON MYERS )
    4104 N.W. Winslow Place )
    Blue Springs, MO 64015 )
     )
        Plaintiffs, )
     )
v. )
     )
BLUE SPRINGS SCHOOL DISTRICT, )
Serve at: )
    1801 N.W. Vesper )
    Blue Springs, MO 64015 )
     )
and )
     )
PAUL KINDER, )
Serve at: )
    1801 N.W. Vesper, )
    Blue Springs, MO 64015 )
     )
and )
     )
DEBBIE CURTIS, )
Serve at: )
    5020 NW Valley View Road )
    Blue Springs, MO 64014 )
     )
and )
     )
RENEE SPAULDING, )
Serve at: )
    201 N.E. Anderson Drive )
    Lee's Summit, MO 64064 )

0916-CV39910

Case No. _____

Division **DIVISION 17**




EXHIBIT
2

and                                )

MURIEL WOOD,           )
Serve at:                  )
      201 N.E. Anderson Drive   )
      Lee's Summit, MO 64064  )
                                )
and                                )

NICK GOOS,              )
Serve at:                  )
      1813 N.W. Main         )
      Blue Springs, MO 64015   )
and                                )

ELIZABETH TALAMANTEZ,  )
Serve at:                  )
      201 N.E. Anderson Drive   )
      Lee's Summit, MO 64064  )
                                )
and                                )

ASHLEY WILDS,            )
Serve at:                  )
      16211 28th Terrace S    )
      Independence, MO 64055  )
                                )
and                                )

WALLY STINE,             )
Serve at:                  )
      5424 N.E. Scenic Drive   )
      Lee's Summit, MO 64064  )
                                )
and                                )

EMILY STINE,             )
Serve at:                  )
      5424 N.E. Scenic Drive   )
      Lee's Summit, MO 64064  )
                                )
                  Defendants.    )

## PETITION FOR DAMAGES
### (TH)

Plaintiffs, Kimberly Myers and Randy Myers, through their undersigned counsel, state the following for their causes of action against Defendants Blue Springs School District, Paul Kinder, Debbie Curtis, Renee Spaulding, Muriel Wood, Nick Goos, Elizabeth Talamantez, Ashley Wilds, Wally Stine and Emily Stine.

### PLAINTIFF

1.      Plaintiffs Randy Myers and Kimberly Myers are individuals over the age of twenty-one (21) and residing in Blue Springs, Missouri. Kimberly Myers is the natural mother of Brandon Myers. Randy Myers is the natural father of Brandon Myers.

### PLAINTIFFS' DECEDENT

2.      Plaintiffs' Decedent, Brandon Myers, was a resident of Lee's Summit, Missouri at the time of his death. Brandon Myers was survived by his parents, Kimberly Myers and Randy Myers. As such, and pursuant to R.S.Mo. 537.080, Kimberly Myers and Randy Myers are proper parties to bring this action for the wrongful death of Brandon Myers.

### DEFENDANTS

### DEFENDANT BLUE SPRINGS SCHOOL DISTRICT

3.      Defendant Blue Springs School District ("the School District") is a public entity existing in Blue Springs, Missouri. Service may be had by serving the superintendent, Defendant Paul Kinder.

3

4.     At all times relevant hereto, the School District was acting by and through its agents, servants, and/or employees, actual or ostensible, including, but not limited to Defendants Kinder, Talamantez, Goos, Wood, Spaulding, Wilds and Curtis, each of whom were acting within the course and scope of their employment with the School District. The School District is a recipient of Federal Funds.

### DEFENDANT PAUL KINDER

5.     Upon information and belief, Defendant Paul Kinder is a resident of Jackson County, Missouri. At all times relevant hereto, he was the superintendent of schools for the Blue Springs School District and acted both individually and within the course and scope of his employment and/or agency as superintendent.

### DEFENDANT DEBBIE CURTIS

6.     Upon information and belief, Defendant Debbie Curtis is a resident of Jackson County, Missouri. At all times relevant hereto, she was the principal of John Nowlin Elementary School, a Blue Springs School District school, and acted both individually and within the course and scope of her employment and/or agency as principal.

### DEFENDANT RENEE SPAULDING

7.     Upon information and belief, Defendant Renee Spaulding is a resident of Jackson County, Missouri. At all times relevant hereto, she was the principal of Voy Spears Elementary School, a Blue Springs School District school, and acted both individually and within the course and scope of her employment and/or agency as principal.

4

### DEFENDANT MURIEL WOOD

8.     Upon information and belief, Defendant Muriel Wood is a resident of Jackson County, Missouri. At all times relevant hereto, she was the counselor at Voy Spears Elementary School, a Blue Springs School District school, and acted both individually and within the course and scope of her employment and/or agency as school counselor.

### DEFENDANT NICK GOOS

9.     Upon information and belief, Defendant Nick Goos is a resident of Jackson County, Missouri. At all times relevant hereto, he was the assistant principal of Voy Spears Elementary School, a Blue Springs School District school, and acted both individually and within the course and scope of his employment and/or agency as assistant principal.

### DEFENDANT ELIZABETH TALAMANTEZ

10.     Upon information and belief, Defendant Elizabeth Talamantez is a resident of Jackson County, Missouri. At all times relevant hereto, she was Brandon Myers' fifth-grade teacher at Voy Spears Elementary School, a Blue Springs School District school, and acted both individually and within the course and scope of her employment and/or agency as a teacher.

### DEFENDANT ASHLEY WILDS

11.     Upon information and belief, Defendant Ashley Wilds is a resident of Jackson County, Missouri. At all times relevant hereto, she was Brandon Myers' third-grade teacher at John Nowlin Elementary School, a Blue Springs School District school, and acted both individually and within the course and scope of her employment and/or agency as a teacher.

5

## STINE DEFENDANTS

12.     Defendants Wally and Emily Stine are both adults who currently reside at 5424 NE Scenic Drive, Lee's Summit, Missouri, 64064. Upon information and belief, Defendants Wally and Emily Stine are the natural parents of John Stine.

## JURISDICTION

13.     Jurisdiction is proper in this court pursuant to R.S.Mo. 506.500 in that all tortuous acts herein alleged took place in Missouri.

## VENUE

14.     Venue is proper pursuant to R.S.Mo. 508.010.4 in that plaintiff was first injured in Jackson County, Missouri. Venue is proper in the Eastern portion of Jackson County pursuant to R.S.Mo. 478.461.

## GENERAL ALLEGATIONS

15.     From Fall of 2001 until the date of his death, February 22, 2007, Brandon Myers was a student in the Blue Springs School District.

16.     Brandon was born with a cleft palate, causing him to suffer multiple operations in an attempt to correct the palate, the last one being performed in November of 2002.

17.     The cleft lip and palate also created a marked speech impediment. Brandon stuttered and had trouble pronouncing certain sounds.

18.     Brandon also suffered from Attention Deficit Disorder and clinical depression.

19.     From 1998 until the time of his death, Brandon took special education and speech therapy courses through the School District.

6

20. Brandon attended John Nowlin Elementary School from Fall of 2001 through Spring of 2006.

21. As a student at Nowlin, Brandon was the victim of relentless bullying, which consisted of targeted, ongoing, severe, and brutal physical and emotional abuse and harassment by his fellow students.

22. Because of his disability, Brandon was constantly physically and emotionally abused and harassed by other students who targeted his disabilities, his clothes, his intelligence, his athleticism, his parents and their financial status, his speech, his physical appearance, etc.

23. Brandon was often forced to defend himself physically against the constant bullying.

24. Brandon's teachers consistently responded by punishing Brandon for defending himself.

25. This response from Brandon's teachers facilitated and encouraged in both Brandon and his tormentors the false impression that Brandon was the problem because he was different and that abusing and harassing him was acceptable.

26. In response to the resulting escalation in abuse and harassment, the school repeatedly called Brandon's father to discuss what the school termed as Brandon's "unprovoked behavior."

27. Brandon and his father discussed Brandon's behavior with John Nowlin Elementary's principal, Debbie Curtis. At these meetings, Brandon repeatedly made clear that he was only responding to the constant attacks by his bullying peers because no one else would protect him.

28. At those meetings, Ms. Curtis "explained" to Brandon and his father that children can be extremely cruel, and that just because they called Brandon stupid did not mean he was stupid.

7

29. Ms. Curtis also advised Brandon that the proper response to bullying is to tell his teacher.

30. In response, Brandon repeatedly told Ms. Curtis that he had been trying to tell the teachers, but nothing was ever done by them to address the problem.

31. Ms. Curtis countered that she simply did not believe him when he said that he tried to tell the teachers and that nothing was done.

32. Brandon's parents repeatedly pled with teachers and administrators to protect Brandon from the constant and severe bullying at the hands of other students.

33. After these exchanges, Ms. Curtis promised Brandon's father that if Brandon was being truthful, she would have meetings with the teachers involved and they would protect Brandon.

34. At no time in his schooling at John Nowlin Elementary School did a teacher, or any other staff member, acknowledge to Brandon or his parents that bullying existed at John Nowlin; rather they repeated the accusations that Brandon was the problem.

35. At no time in his schooling at John Nowlin Elementary School did Brandon ever receive from a teacher, or any other staff member, protection from the constant and ongoing abuse and harassment by his classmates.

36. While in third grade at John Nowlin Elementary School, Brandon was attacked by several students during recess. These students threatened Brandon that they were "going to fill up that hole in your face," then tackled Brandon, holding him down while shoving dirt and grass into his mouth and nose.

37. No teacher came to his aid.

8

38. Near the end of his third-grade year, Brandon dreaded going to school. He viewed every school day as another day in which he would be subjected to severe, relentless physical and emotional abuse and harassment about his stuttering, his looks, his clothes, his level of intelligence, his level of athleticism, and even his family.

39. Around that same time, Brandon was diagnosed with ADHD and depression.

40. In that same time period, Brandon asked his parents if he could be home schooled, or in the alternative, if he could switch from John Nowlin Elementary School to Voy Spears Elementary School.

41. School officials repeatedly told Brandon's parents that John Nowlin Elementary School had no problems with bullies and that Brandon was engaging in unprovoked acting out.

42. Brandon remained at John Nowlin Elementary School for his fourth-grade year.

43. In response to Brandon's standing up to his abusers, John Nowlin Elementary School's counselor offered Brandon the option of coming to her office and jumping on a trampoline whenever he felt as if he was being picked on. She made no offer or effort to confront his abusers.

44. During his fourth grade year, Brandon continued to be the victim of the same daily physical and emotional abuse and harassment as set forth above.

45. When his schoolmates would not even allow him to find a place to cry alone, Brandon would stand up to his tormentors; his teachers continued to punish him for doing so.

46. Throughout that same school year, Brandon's parents continued to meet with the school regarding Brandon's victimization and continued to be told that there was no bullying problem and that Brandon's actions in response to the bullying were unprovoked.

9

47.     In the summer after his fourth-grade year, Brandon's parents agreed that relocating him to Voy Spears Elementary School might help, despite John Nowlin Elementary School's repeated assurances that no bullying problem existed and that Brandon was the problem.

48.     The morning Brandon was to start fifth grade at Voy Spears Elementary School marked the first morning in years Brandon did not dread going to school.

49.     Brandon's parents met with his fifth-grade teacher, Elizabeth Talamantez, shortly after the start of the school year to discuss with her the problems he had experienced at John Nowlin Elementary School, as well as his medical diagnoses.

50.     Soon after Brandon started attending Voy Spears Elementary School, the boys in Brandon's fifth grade began harassing, tormenting, mocking, and ridiculing Brandon.

51.     On one occasion, early in his fifth grade year, a male classmate of Brandon's intentionally spilled milk on Brandon.

52.     A group of children then began laughing and mocking him, leaving Brandon in tears.

53.     Brandon's friend, Trystan Wagner, came to his aid by giving Brandon his sweatshirt and telling the other children to stop laughing.

54.     No teacher or staff member at Voy Spears Elementary School responded in any way to the student's pouring milk on Brandon.

55.     No teacher or staff member at Voy Spears Elementary School intervened in any way as the other children laughed at and mocked Brandon.

56.     Shortly after the milk incident, Brandon's parents met with Elizabeth Talamantez.

57.     Elizabeth Talamantez told the parents that "at fifth grade, they [the students] are going to have to solve their own problems."

10

58.     Consistent with her theory that children are mature enough to resolve the problems of severe and ongoing bullying on their own, Elizabeth Talamantez forced Brandon to sit alone across a table from his tormentors with instructions to "work it out."

59.     The "peace table," as it was called by Elizabeth Talamantez, did nothing to stop what had now become daily physical and emotional abuse targeting Brandon.

60.     After experiencing the "peace table," Brandon understood that, as at John Nowlin Elementary School, the teachers and staff at Voy Spears Elementary School would do nothing to prevent the constant, severe bullying he was again experiencing.

61.     Shortly into his fifth grade year, Brandon again dreaded going to school every morning.

62.     During the winter of his fifth-grade year, Brandon again began attempting to stand up for himself.

63.     In January of his fifth-grade year, Brandon wrote a note directed to four students who constantly abused him. The note stated that he was angry about being a victim of the students' abuse and that if it continued he would do something about it.

64.     In response to the note to his tormentors, Brandon's teachers punished him.

65.     Brandon's parents were told that his actions in writing the note were unprovoked.

66.     In January of his fifth-grade year, a classmate of Brandon's dumped trash in Brandon's lunch, and Brandon removed the trash and tossed it at the child responsible.

67.     In response to the trash incident, the school again punished Brandon.

68.     Brandon's parents were told that his tossing the trash was unprovoked.

11

69. On or about February 14, 2007, John Stine, one of Brandon's most persistent abusers at Voy Spears Elementary School, was driven by his parents, Wally and Emily Stine, to Brandon's home for the purpose of vandalizing the home.

70. On or about February 14, 2007, John, Wally, and Emily Stine vandalized Brandon's home by throwing trash in the trees and yard.

71. Brandon responded to the vandalizing of his home by calling John Stine and telling John that he would return the favor.

72. As a result of Brandon's phone call to John Stine, Wally Stine informed Brandon's parents that Brandon had threatened to vandalize the Stines' home.

73. When Brandon's parents confronted him about his phone call to John Stine, Brandon insisted that it was John and his parents who had vandalized their home.

74. As a result of the Stines' actions and accusations, Brandon's hopelessness and depression increased.

75. On February 22, 2007, the school partnered Brandon with Chase Cole, one of the students who had a history of abusing and harassing Brandon at Voy Spears Elementary School, in a "buddy" program in which fifth graders would read to second graders.

76. In the presence of the second-grade teacher, Chase Cole mocked Brandon about being depressed. When the second grade student to whom they were reading asked Chase what "depressed" meant, Chase explained in a mocking tone that Brandon was "sad all the time."

77. The second-grade teacher was aware of Chase's mocking Brandon's depression, yet she did not interfere or come to Brandon's aid.

12

78.     Before Brandon left school that day, he wrote the following note: "I have had enuf (sic) of this crapy (sic) life I will hang my self tonnight (sic). So if you have any thing (sic) to say to me I sugjest (sic) you tell me beffor (sic) 4:35 P.M. tonnight (sic) tell some others in our class and tell them they have intill (sic) 4:38 p.m."

79.     On February 22, 2007, as a direct and proximate result of Defendants' acts and omissions, Brandon suffered from overwhelming feelings of despair and helplessness, manifesting themselves as an irresistible impulse to commit suicide.

80.     On February 22, 2007, Plaintiff Brandon was left bereft of reason as a direct and proximate result of Defendants acts and omissions, including, but not limited to those described herein.

81.     On February 22, 2007, Plaintiff Brandon committed suicide by hanging.

### COUNT I
### WRONGFUL DEATH - NEGLIGENCE
#### (Plaintiffs v. Blue Springs School District)

82.     Plaintiffs hereby incorporate the allegations set forth in paragraphs 1 through 81 above, as though fully set forth herein.

83.     While a student in the School District, Brandon Myers was under the custody and control of the School District.

84.     The students who abused and harassed Brandon were under the custody and control of the School District at all times relevant to this cause of action.

85.     At the time of and leading up to Brandon's death, the School District knew that readily identifiable students within the School District's custody and control were harassing, abusing, and otherwise bullying Brandon both physically and emotionally.

13

86. Despite that knowledge, the School District failed completely to protect Brandon from his abusers or to discipline or otherwise discourage his abusers from abusing Brandon.

87. Defendant Blue Springs School District knew or should have known that a culture of bullying existed within its schools because the School District:

    A)    Knew that Brandon was the victim of daily abuse, harassment, and torment by his classmates at Defendant's schools for years leading up to his death;

    B)    Knew that concerned parents of other children in the School District repeatedly complained to the School District about the bullying problem;

    C)    Knew that in the fall of 2005, a female Blue Springs High School student had been assaulted by a group of bullies, leading to felony charges; and,

    D)    Knew or should have known of other instances of bullying as yet unknown to Plaintiffs.

88. At all times in which Brandon was a student in the School District, the School District had a duty to possess and use the same degree of care ordinarily used by reasonable and/or careful School Districts to properly supervise its students and to protect Brandon from foreseeable and unreasonable risks of harm posed by students under the School District's custody and control.

89. Defendant Blue Springs School District breached its duty to properly supervise its students and to intervene effectively to stop the abuse Brandon was suffering at the hands of his peers by:

    A)    Negligently and carelessly failing to monitor the classroom and school for physical and verbal abuse;

14

B)     Negligently and carelessly failing to timely recognize the severity of the abuse against Brandon;

C)     Negligently and carelessly failing to properly address the abuse against Brandon;

D)     Negligently and carelessly failing to ensure that Brandon Myers was put in a safe learning environment;

E)     Negligently and carelessly failing to supervise the students who were abusing Brandon;

F)     Negligently and carelessly failing to comply with Nowlin's, Voy Spears's, and the School District's own bullying, harassment and assault policies, if such existed;

G)     Negligently and carelessly failing to discipline or otherwise discourage the behavior of students who were physically and verbally abusing Brandon Myers;

H)     Negligently and carelessly affirmatively promoting the idea to Brandon, his parents, and to his abusers that Plaintiff Brandon was to blame for and deserving of the abuse he endured;

I)     Negligently and carelessly ignoring Brandon's pleas for aid against his abusers;

J)     Negligently and carelessly ignoring Brandon's parents' pleas for aid against his abusers;

15

K)  Negligently and carelessly committing acts and omissions that encouraged continual abuse against Brandon;

I)  Negligently and carelessly contributing to Brandon's emotional collapse by continuously blaming and punishing Brandon;

J)  Negligently and carelessly committing other acts and omissions that directly caused and enhanced Brandon's emotional collapse and despair;

K)  Negligently and carelessly ignoring the pleas of concerned parents and others to address the bullying problem;

L)  Negligently and carelessly failing to implement proven anti-bullying measures, even though such measures and the need for such measures have been widely known among educational researchers and educators for over two decades and successfully implemented in other schools across the United States and the world; and,

M)  Negligently and carelessly committing other acts and omissions as yet unknown to Plaintiffs.

90.  As a direct and proximate result of Defendant Blue Springs School District's negligence and carelessness, Plaintiff Brandon Myers was exposed to foreseeable and known risks of severe injury; was severely injured; and was left bereft of reason, resulting in an irresistible impulse to kill himself and leading to his death.

91.  Brandon Myers has incurred necessary and reasonable medical expenses, suffered physical pain and mental anguish, experienced other economic hardships, and eventually lost his life, all as a direct and proximate result of Defendants' negligence.

16

92. Because of the untimely death of Brandon Myers, plaintiffs have been, and in the future will be, deprived of services, support, maintenance, guidance, companionship, comfort, and each has sustained other damages which can reasonably be measured in money. Plaintiffs have also incurred burial and other expenses as a direct result of the death of Brandon Myers.

93. By reason of the foregoing, plaintiffs have been damaged and are entitled to fair and reasonable compensation.

94. Defendants' conduct which caused this damage showed complete indifference to and/or conscious disregard for the health and safety of Brandon Myers and other people similarly situated, justifying the imposition of punitive damages.

WHEREFORE, Plaintiffs pray for an award of damages against Defendants, in an amount to be determined by the jury, for punitive damages, together with interest and costs of suit and for such other relief as is just and proper.

### COUNT II
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(Plaintiffs v. Blue Springs School District )

95. Plaintiffs hereby adopt and incorporate the allegations set forth in paragraphs 1 through 94 above, as though fully set forth herein.

96. Defendant Blue Springs School District breeched a duty owed to Plaintiff Brandon Myers, as alleged in Count I.

97. Defendant Blue Springs School District committed negligent and tortuous acts against Plaintiff Brandon Myers, as alleged in Count I, Negligent Supervision.

98. At the time of their negligent acts and omissions, Defendant Blue Springs School District should have known that continuous abuse by classmates causes victims to suffer from one

17

or more of the following: lack of motivation at school, increased absenteeism, eating disorders, chronic anxiety, depression, psychiatric problems, and suicidal tendencies.

99. Plaintiff Brandon suffered medically significant and diagnosable emotional distress as a direct and proximate result of the School District's negligent and careless acts and omissions.

100. Brandon Myers has incurred necessary and reasonable medical expenses, suffered physical pain and mental anguish, experienced other economic hardships, and eventually lost his life, all as a direct and proximate result of Defendants' negligence.

101. By reason of the foregoing, plaintiffs have been damaged and are entitled to fair and reasonable compensation.

102. Defendants' conduct which caused this damage showed complete indifference to and/or conscious disregard for the health and safety of Brandon Myers and other people similarly situated, justifying the imposition of punitive damages.

WHEREFORE, Plaintiffs pray for an award of damages against Defendants, in an amount to be determined by the jury, for punitive damages, together with interest and costs of suit and for such other relief as is just and proper.

### COUNT III
### WRONGFUL DEATH -NEGLIGENCE
(Plaintiffs v. Paul Kinder, Debbie Curtis, Ashley Wilds, Renee Spaulding, Muriel Wood, Nick Goos, and Elizabeth Talamantez)

103. Plaintiffs hereby adopt and incorporate the allegations set forth in paragraphs 1 through 102 above, as though fully set forth herein.

104. While Defendant Paul Kinder was the Superintendent of the Blue Springs School District, Brandon was a student in the Blue Springs School District.

18

105. As the Superintendent of the School District, Defendant Paul Kinder had a duty to possess and use that degree of skill and care ordinarily used by reasonable and/or careful Superintendents to protect students, including Brandon, from unreasonable risks of harm.

106. As Brandon's teacher, Elizabeth Talamantz had a duty to possess and use that degree of skill and care ordinarily used by reasonable and/or careful teachers to protect Brandon from unreasonable risks of harm.

107. As Brandon's teacher, Ashley Wilds had a duty to possess and use that degree of skill and care ordinarily used by reasonable and/or careful teachers to protect Brandon from unreasonable risks of harm.

108. As Brandon's principal, Renee Spaulding had a duty to possess and use that degree of skill and care ordinarily used by reasonable and/or careful principals to protect Brandon from unreasonable risks of harm.

109. As Brandon's principal, Debbie Curtis had a duty to possess and use that degree of skill and care ordinarily used by reasonable and/or careful principals to protect Brandon from unreasonable risks of harm.

110. As Brandon's vice principal, Nick Goos had a duty to possess and use that degree of skill and care ordinarily used by reasonable and/or careful ice principals to protect Brandon from unreasonable risks of harm.

111. As Brandon's school counselor, Muriel Wood had a duty to possess and use that degree of skill and care ordinarily used by reasonable and/or careful counselors to protect Brandon from unreasonable risks of harm.

19

112. At the time of and leading up to Brandon's death, Defendants Kinder, Curtis, Talamantez, Spaulding, Goos, Wilds and Wood knew or should have known a culture of bullying existed within Blue Springs schools, to wit:

A) Brandon was the victim of daily abuse, harassment, and torment by his classmates at Defendant's schools for years leading up to his death;

B) Brandon initially reported all instances of bullying, torment, and abuse to his teachers, only failing to do so after teachers discouraged him from reporting;

C) Brandon's parents routinely met with school officials to discuss Brandon's behavior, the root of which was the unchecked bullying culture existing in the School District;

D) Brandon and his parents reported past and present bullying problems directly to Defendants Talamantez, Wood, Goos, Curtis, Woods and Spaulding;

E) Concerned parents of other children in the Blue Spring School District repeatedly complained to the School District about the bullying problem;

F) In the fall of 2005, a female Blue Springs High School student was assaulted by a group of bullies, leading to felony charges; and,

G) Actual and constructive knowledge existed of other bullying incidents as yet unknown to Plaintiffs.

20

113.    Defendants Kinder, Spaulding, Wood, Goos, Curtis, Wilds and Talamantez, breached their duty by committing acts and omissions of negligence and carelessness, and by failing to meet the requisite standards of due care, skill and practice as required by public entities in their field, to wit:

A)    Negligently and carelessly failing to monitor the classroom and school for physical and verbal abuse and other forms of bullying;

B)    Negligently and carelessly failing to timely recognize the severity of the abuse against Brandon Myers;

C)    Negligently and carelessly failing to properly address the abuse against Brandon Myers;

D)    Negligently and carelessly failing to ensure that Brandon Myers was put in a safe learning environment;

E)    Negligently and carelessly failing to supervise the students who were abusing Brandon;

F)    Negligently and carelessly failing to comply with Voy Spears's own bullying, harassment and assault policies;

G)    Negligently and carelessly failing to discipline students who were physically and verbally abusing Brandon Myers;

H)    Negligently and carelessly ignoring the pleas of concerned parents and others to address the bullying problem;

I)    Negligently and carelessly reinforcing, on a continuous basis, the idea that Plaintiff Brandon was to blame for and deserved his abuse;

21

J) Negligently and carelessly committing acts and omissions that encouraged continual abuse against Brandon;

K) Negligently and carelessly contributing to the emotional collapse of Brandon by continuously blaming and punishing Brandon;

L) Negligently and carelessly committing acts and omissions that directly caused and enhanced Brandon's emotional collapse and despair; and,

M) Negligently and carelessly committing other acts and omissions as yet unknown to Plaintiffs.

114. As a direct and proximate result of Defendant Blue Springs School District's negligence, Plaintiff Brandon was left bereft of reason resulting in an irresistible impulse to kill himself and leading to his death.

115. Brandon Myers has incurred necessary and reasonable medical expenses, suffered physical pain and mental anguish, experienced other economic hardships, and eventually lost his life, all as a direct and proximate result of Defendants' negligence.

116. Because of the untimely death of Brandon Myers, plaintiffs have been, and in the future will be, deprived of services, support, maintenance, guidance, companionship, comfort, and each has sustained other damages which can reasonably be measured in money. Plaintiffs have also incurred burial and other expenses as a direct result of the death of Brandon Myers.

117. By reason of the foregoing, plaintiffs have been damaged and are entitled to fair and reasonable compensation.

22

118.    Defendants' conduct which caused this damage showed complete indifference to and/or conscious disregard for the health and safety of Brandon Myers and other people similarly situated, justifying the imposition of punitive damages.

WHEREFORE, Plaintiffs pray for an award of damages against Defendants, in an amount to be determined by the jury, for punitive damages, together with interest and costs of suit and for such other relief as is just and proper.

## COUNT IV
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiffs v. Paul Kinder, Debbie Curtis, Renee Spaulding, Muriel Wood, Nick Goos, Ashley Wilds and Elizabeth Talamantez)

119.    Plaintiffs hereby adopt and incorporate the allegations set forth in paragraphs 1 through 118 above, as though fully set forth herein.

120.    Defendants Kinder, Wood, Spaulding, Curtis, Wilds, Goos, and Talamantez breeched a duty owed to Plaintiff Brandon Myers, as alleged in Count I, Negligent Supervision.

121.    Defendants Kinder, Wood, Spaulding, Curtis, Wilds, Goos, and Talamantez committed negligent and tortuous acts against Plaintiff Brandon, as alleged in Count III.

122.    At the time of their negligent acts and omissions, Defendants Kinder, Wood, Spaulding, Goos, Curtis, Wilds and Talamantez should have known that continuous abuse by classmates causes victims to suffer from one or more of the following: lack of motivation at school, increased absenteeism, eating disorders, chronic anxiety, depression, psychiatric problems, and suicidal tendencies.

123.    Plaintiff Brandon suffered medically significant and diagnosable emotional distress as a direct and proximate result of the School District's negligent and careless acts and omissions.

23

124. Brandon Myers has incurred necessary and reasonable medical expenses, suffered physical pain and mental anguish, experienced other economic hardships, and eventually lost his life, all as a direct and proximate result of Defendants' negligence.

125. By reason of the foregoing, plaintiffs have been damaged and are entitled to fair and reasonable compensation.

126. Defendants' conduct which caused this damage showed complete indifference to and/or conscious disregard for the health and safety of Brandon Myers and other people similarly situated, justifying the imposition of punitive damages.

WHEREFORE, Plaintiffs pray for an award of damages against Defendants, in an amount to be determined by the jury, for punitive damages, together with interest and costs of suit and for such other relief as is just and proper.

## COUNT V
### WRONGFUL DEATH - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Plaintiffs v. Wally, Emily and John Stine)

127. Plaintiffs hereby adopt and incorporate the allegations set forth in paragraphs 1 through 126 above, as though fully set forth herein.

128. Beginning on or about December 1, 2006, and continuing until on or about February 1, 2007, Brandon regularly received phone calls from John Stine and a female companion.

129. Upon information and belief, this female companion was a cousin of John Stine.

130. In these regular and harassing phone calls, the female companion of John Stine would identify herself as a girl upon whom Brandon had a crush. John Stine knew about Brandon's crush.

24

131. In these regular and harassing phone calls, Brandon would be skeptical of the caller's identity, but John Stine's female companion would be adamant that she was who she said she was and feign insult by his disbelief.

132. In these regular and harassing phone calls, Brandon would eventually acknowledge that he believed the caller to be real, at which point both John Stine and his female companion would laugh and insult Brandon, telling him that his crush would never call him.

133. Upon information and belief, these phone calls were done with the knowledge and approval of Wally and Emily Stine.

134. Wally and Emily's conduct toward Brandon, including the condoning of regular hurtful and harassing phone calls; financing, driving, and actively participating in the vandalizing of Brandon's home and property; and falsely accusing Brandon of unprovoked threats to their property, amount to outrageous conduct.

135. Wally and Emily Stine acted intentionally, with the design to cause Brandon emotional distress.

136. The Stines' conduct was outrageous and directly and proximately caused Brandon to suffer medically diagnosable and medically significant emotional distress.

137. Such outrageous and intentional conduct directly and proximately caused or contributed to Brandon's emotional collapse, which included overwhelming feelings of despair and helplessness, manifesting themselves as an uncontrollable urge to commit suicide and leading to Brandon's death.

138. Plaintiff Brandon suffered medically significant and diagnosable emotional distress as a direct and proximate result of Defendants' acts and omissions.

25

139.    Brandon Myers has incurred necessary and reasonable medical expenses, suffered physical pain and mental anguish, experienced other economic hardships, and eventually lost his life, all as a direct and proximate result of Defendants' negligence.

140.    By reason of the foregoing, plaintiffs have been damaged and are entitled to fair and reasonable compensation.

141.    Defendants' conduct which caused this damage showed complete indifference to and/or conscious disregard for the health and safety of Brandon Myers and other people similarly situated, justifying the imposition of punitive damages.

WHEREFORE, Plaintiffs pray for an award of damages against Defendants, in an amount to be determined by the jury, for punitive damages, together with interest and costs of suit and for such other relief as is just and proper.

## COUNT VI
## WRONGFUL DEATH - UNLAWFUL DISCRIMINATION IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT
(Plaintiffs v. Blue Springs School District, Renee Spaulding, Nick Goos, Muriel Wood, Paul Kinder, Ashley Wilds, Debbie Curtis and Elizabeth Talamantez)

142.    Plaintiffs hereby adopt and incorporate the allegations set forth in paragraphs 1 through 141 above, as though fully set forth herein.

143.    The Blue Springs School District receives federal funds for its educational programs and is therefore subject to Section 504 of the Rehabilitation Act.

144.    Brandon suffered from physical impairments that substantially limited the major life activities of speaking and communicating, and was thus a qualified individual with a disability as defined by the Rehabilitation Act.

26

145.    The School District created an Individual Education Plan (IEP) for Brandon, as a result of his disabilities, when he began early childhood special education in the School District in 1998.

146.    Beginning in 1998 and continuing until his death, Brandon's IEP required ninety minutes a week in speech therapy to help improve his resonance, fluency, and language structure.

147.    As set forth above, Brandon was the victim of daily abuse, torment, and harassment by his peers.

148.    This abuse, torment, and harassment was motivated by and focused upon Brandon's disability.

149.    Brandon had the right to fully participate in and benefit from his education, and these rights could not legally be denied to him based on his disability.

150.    Brandon had the right to a non-hostile educational environment, including an environment free from harassment based on his disability.

151.    The School District had actual knowledge that Brandon was being tormented about his disability, yet took no steps reasonably calculated to protect Brandon or to investigate the abuse and harassment he was enduring.

152.    The School District had actual knowledge that Brandon's daily educational environment included harassment based on his disability, yet the School District took no steps reasonably calculated to end the disability-based harassment.

153.    The frequency and extent of the disability-based abuse Brandon suffered at the hands of his peers denied Brandon full participation and benefits of his education.

27

154.    The School District had actual knowledge that Brandon was being denied full participation in and benefits from his education based on his disability, yet was deliberately indifferent to his plight.

155.    Brandon was being discriminated against based on his disability, by his peers; yet the school district was deliberately indifferent to the discrimination.

156.    The School District's deliberate indifference to the discrimination suffered by Brandon constituted bad faith and gross misjudgment by the School District and intentional discrimination based upon Brandon's disability.

157.    The School District's bad faith, gross misjudgment, and deliberate indifference to the discrimination suffered by Brandon increased Brandon's vulnerability to the acts leading to his death in that they:

        A)    Encouraged further and more severe bullying, harassment, torment, and abuse of Brandon by his classmates, given that the school would not interfere or respond in any way, except to punish Brandon for defending himself;

        B)    Increased Brandon's sense that he deserved and would always deserve to be harassed, bullied, tormented, and abused and that the school would do nothing to protect him and would punish him if he defended himself.;

        C)    Increased Brandon's classmates' sense that Brandon deserved and always would deserve to be abused, tormented, bullied and harassed and that the school would not only approve such behavior but would punish Brandon if he defended himself;

28

D) Prevented Brandon from taking any actions to stop the bullying, torment, abuse and harassment, leaving him no reasonable means of escape or protection; and,

E) Caused, increased, and accelerated Brandon's emotional collapse and despair.

158. Brandon Myers has incurred necessary and reasonable medical expenses, suffered physical pain and mental anguish, experienced other economic hardships, and eventually lost his life, all as a direct and proximate result of Defendants' actions.

159. By reason of the foregoing, plaintiffs have been damaged and are entitled to fair and reasonable compensation.

160. Defendants' conduct which caused this damage showed complete indifference to and/or conscious disregard for the health and safety of Brandon Myers and other people similarly situated, justifying the imposition of punitive damages.

WHEREFORE, Plaintiffs pray for an award of damages against Defendants, in an amount to be determined by the jury, for punitive damages, together with interest and costs of suit and for such other relief as is just and proper.

### COUNT VII
### WRONGFUL DEATH - SECTION 1983 - STATE CREATED DANGER
(Plaintiffs v. Blue Springs School District and Debbie Curtis, Renee Spaulding, Nick Goos, Muriel Wood, Paul Kinder, Ashley Wilds, and Elizabeth Talamantez, individually and in their official capacities)

161. Plaintiffs hereby adopt and incorporate the allegations set forth in paragraphs 1 through 160 above, as though fully set forth herein.

29

162. Because Missouri has chosen to provide a free public education to its children, Brandon had a Constitutional property right to a free public education protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

163. Brandon also had Constitutional rights to bodily integrity, to due process, to be secure and to be left alone, and to life protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

164. Defendant Blue Springs School Board, and all school defendants individually named, acting both in their capacity as agents of the School District and individually at all times referenced in this petition, were acting under the color of state law.

165. At the time of their actions, the School District and the school defendants knew or should have known that a culture of bullying existed within the School District and at John Nowlin Elementary and Voy Spears Elementary schools.

166. At the time of their actions, Defendants had actual knowledge of ongoing and severe abuse suffered by Brandon at the hands of students under the Defendants' custody and control and that the abuse was depriving Brandon of his right to an education, his right to bodily integrity, and endangering his right to life.

167. At the time of their actions, the School District and the school defendants knew which students were abusing Brandon, and it was readily foreseeable that their abuse would continue into the future and result in the deprivation of Brandon's Constitutional rights to a public education, to bodily integrity, to be secure and left alone, and to life.

30

168.  The School District and the school defendants enhanced the danger to Brandon and rendered him more vulnerable to the deprivation of his rights to an education, to bodily integrity, to be secure and left alone, and to life through numerous affirmative acts, including, but not limited to:

A)  Affirmatively discouraging Brandon from reporting the abuse by telling him that "nobody likes a tattletale" and that he should not report incidents of torment, harassment, and abuse;

B)  Affirmatively discouraging Brandon from seeking help against his abusers by telling Brandon that he was not telling the truth when he represented that he had told teachers and that teachers were not responding;

C)  Affirmatively discouraging Brandon and his parents from seeking aid against his abusers at school by telling Brandon's parents that fifth graders are mature enough to resolve daily abuse, torment, and harassment;

D)  Affirmatively discouraging Brandon's parents from seeking aid for Brandon against his abusers at school by knowingly misrepresenting to Brandon's parents that Brandon's behavior was unprovoked;

E)  Affirmatively discouraging Brandon's parents from seeking aid for Brandon against his abusers at school by knowingly misrepresenting to Brandon's parents that there is no bullying problem in the School District or at John Nowlin or at Voy Spears;

F)  Affirmatively enhancing his vulnerability to the abuse by punishing Brandon for his attempts to stand up to his abusers;

31

G) Affirmatively exposing Brandon to further abuse by forcing Brandon to sit unsupervised across a table from his abusers and tormentors; and,

H) Affirmatively discouraging action to prevent abuse by bullies in the School District and at Voy Spears and John Nowlin by knowingly misrepresenting to the public and the media that there was no bullying problem in the School District.

169. The School District's and the school defendants' affirmative acts were committed with a deliberate indifference to and reckless and willful disregard for Brandon's Constitutional rights. These affirmative acts increased the danger to Brandon and led to his death in that they:

A) Left Brandon at the mercy of his bullying peers while affirmatively preventing him from taking any actions to stop the bullying, torment, abuse, and harassment and leaving him no reasonable means of escape or protection;

B) Increased Brandon's sense that he deserved and would always deserve to be harassed, bullied, tormented, and abused and that he should not protect himself and that the school would do nothing to protect him and would punish him if he defended himself;

C) Increased Brandon's classmates' sense that Brandon deserved and always would deserve to be abused, tormented, bullied, and harassed and that the school would not only permit such behavior but would punish Brandon if he defended himself;

32

D) Encouraged further and more severe bullying, harassment, torment, and abuse of Brandon from his classmates by sending the message to his abusers that the school approved of his classmates' behavior and would not interfere or respond in any way, except to punish Brandon for defending himself; and,

E) Caused, increased, and accelerated Brandon's emotional collapse and despair, which led directly to his death.

170. These affirmative acts by the School District and the school defendants, taken as a whole and in the context of a known bullying culture in the School District, increased the danger to Brandon and amount to shocking, egregious, and outrageous behavior.

171. Brandon Myers has incurred necessary and reasonable medical expenses, suffered physical pain and mental anguish, experienced other economic hardships, and eventually lost his life, all as a direct and proximate result of Defendants' actions.

172. By reason of the foregoing, plaintiffs have been damaged and are entitled to fair and reasonable compensation.

173. Defendants' conduct which caused this damage showed complete indifference to and/or conscious disregard for the health and safety of Brandon Myers and other people similarly situated, justifying the imposition of punitive damages.

WHEREFORE, Plaintiffs pray for an award of damages against Defendants, in an amount to be determined by the jury, for punitive damages, together with interest and costs of suit and for such other relief as is just and proper.

33

## COUNT VIII
### WRONGFUL DEATH - SUPERVISORY LIABILITY FOR PARTICIPATION IN AND ENCOURAGEMENT OF UNCONSTITUTIONAL MISCONDUCT BY SUBORDINATES
### (42 U.S.C. § 1983)
**(Plaintiffs vs. Defendants Paul Kinder, Debbie Curtis, Renee Spaulding, and Nick Goos)**

174. Plaintiffs hereby adopt and incorporate the allegations set forth in paragraphs 1 through 173 above, as though fully set forth herein.

175. At all times relevant to this petition, Superintendent Kinder had supervisory authority over and responsibility for all School District employees, including a close supervisory position over Principal Curtis, Principal Spaulding, and Vice Principal Goos.

176. At all times relevant to this petition, Principal Curtis had supervisory authority over all of the teachers and employees at John Nowlin Elementary School.

177. At all times relevant to this petition, Principal Spaulding had supervisory authority over Vice Principal Goos, Wood, Talamantez, and Wilds, and all other employees of Voy Spears Elementary School.

178. At all times relevant to this petition, Vice Principal Goos had supervisory authority over Defendants Wood, Talamantez, Wilds, and all other employees of Voy Spears Elementary School.

179. At all times relevant to this petition, Defendants Kinder, Curtis, Spaulding, and Goos were acting under color of state law in both their individual and official capacities.

34

180.    Superintendent Kinder knew or should have known that Principal Curtis, Principal Spaulding, Vice Principal Goos, and other teachers and administrators in the School District were unconstitutionally placing students, including Brandon, in increased danger of severe, ongoing, and targeted bullying and the resulting foreseeable deprivations of their Constitutional rights to a public education, to bodily integrity, to be secure and to be left alone, to life, and to substantive due process under the Fourteenth Amendment to the Constitution of the United States.

181.    Principal Curtis knew or should have known that teachers and other employees at John Nowlin were placing students, including Brandon, in increased danger of severe, ongoing, and targeted bullying and the resulting deprivation of their Constitutional rights to a public education, to bodily integrity, to life, to be secure and left alone, and to substantive due process under the Fourteenth Amendment to the Constitution of the United States.

182.    Principal Spaulding knew or should have known that Vice Principal Goos and Defendants Wood, Talamantez, and Wilds, along with other employees, were placing students, including Brandon, in increased danger of severe, ongoing, and targeted bullying and the resulting deprivation of their Constitutional rights to a public education, to bodily integrity, to life, to be secure and to be left alone, and to substantive due process under the Fourteenth Amendment to the Constitution of the United States.

183.    Vice Principal Goos knew or should have known that Defendants Wood, Talamantez, and Wilds, along with other employees, were placing students, including Brandon, in increased danger of severe, ongoing, and targeted bullying and the resulting deprivation of their Constitutional rights to a public education, to bodily integrity, to life, to be secure and to be left alone, and to substantive due process under the Fourteenth Amendment to the Constitution of the United States.

35

184.    By rejecting the implementation of proven bullying prevention strategies in the School District and by approving of, and refusing to intervene to prevent, his subordinates' continuing pattern of unconstitutional misconduct toward Brandon and other students who were victims of severe bullying, Superintendent Kinder encouraged and participated in that conduct and demonstrated a deliberate indifference to or tacit authorization of his subordinates' offensive acts.

185.    By rejecting the implementation of proven bullying prevention strategies in her school and by approving of, and refusing to intervene to prevent, their subordinates' continuing pattern of unconstitutional misconduct toward Brandon and other students who were victims of severe bullying, Principal Curtis, Principal Spaulding, and Vice Principal Goos encouraged and participated in that conduct and demonstrated a deliberate indifference to or tacit authorization of their subordinates' offensive acts.

186.    By encouraging and participating in the unconstitutional misconduct of their subordinates, and failing to take sufficient remedial action to deter that misconduct, defendants Kinder, Curtis, Spaulding, and Goos acted with deliberate, reckless, and callous disregard for Brandon's Constitutional rights to a public education, to bodily integrity, to life, to be secure and to be left alone, and to substantive due process under the Fourteenth Amendment to the Constitution of the United States.

187.    As a direct result of their encouraging and participating in the unconstitutional misconduct of their subordinates, defendants Kinder, Curtis, Spaulding, and Goos caused Brandon to suffer the deprivation of his rights to a public education, to bodily integrity, to life, to be secure and be left alone, and to substantive due process under the Fourteenth Amendment to the Constitution of the United States.

36

188.    Brandon Myers has incurred necessary and reasonable medical expenses, suffered physical pain and mental anguish, experienced other economic hardships, and eventually lost his life, all as a direct and proximate result of Defendants' actions.

189.    By reason of the foregoing, plaintiffs have been damaged and are entitled to fair and reasonable compensation.

190.    Defendants' conduct which caused this damage showed complete indifference to and/or conscious disregard for the health and safety of Brandon Myers and other people similarly situated, justifying the imposition of punitive damages.

WHEREFORE, Plaintiffs pray for an award of damages against Defendants, in an amount to be determined by the jury, for punitive damages, together with interest and costs of suit and for such other relief as is just and proper.

### COUNT IX
### WRONGFUL DEATH - DENIAL OF SUBSTANTIVE DUE PROCESS THROUGH FAILURE TO TRAIN AND SUPERVISE (42 U.S.C. § 1983)
### (Plaintiffs v. Blue Springs School District)

191.    Plaintiffs hereby adopt and incorporate the allegations set forth in paragraphs 1 through 190 above, as though fully set forth herein.

192.    Over twenty years of widely published empirical research has made clear to educators that severe, ongoing, and targeted bullying in schools is pervasive and routinely results in clinical depression, suicidal thoughts, and suicide among its targeted victims.

193.    Over twenty years of widely published empirical research has demonstrated to educators that seven to fifteen percent of students in every type of traditional educational setting are victims of severe, ongoing, and targeted bullying.

37

194. Over twenty years of widely published empirical research has provided educators with proven strategies to dramatically reduce and prevent severe, ongoing, and targeted bullying and to transform bullying school cultures into positive and supportive school cultures.

195. Over twenty years of widely published empirical research has informed educators as to appropriate and effective responses to known instances of severe, ongoing, and targeted bullying in schools.

196. The School District should have known and/or did know of severe, ongoing, and targeted bullying in its schools, in that it

    A)    knew that Brandon was the victim of daily abuse, harassment, and torment by his classmates at Defendant's schools for years leading up to his death;

    B)    knew that concerned parents of other children in the School District repeatedly complained to the School District about the bullying problem;

    C)    knew that in the fall of 2005, a female Blue Springs High School student had been assaulted by a group of bullies, leading to felony charges; and,

    D)    knew or should have known of other instances of bullying as yet unknown to Plaintiffs.

197. The School District should have known and/or did know of the severe, ongoing, and targeted bullying to which Brandon was subjected.

198. The School District should have known and/or did know that the consistent response to Brandon's victimization was to ignore that bullying and punish Brandon when he stood up to his tormentors.

38

199.     The School District should have known and/or did know that the consistent response to bullying in the district was to ignore instances of bullying and to deny that a bullying problem existed in the School District's schools.

200.     Given what the School District should have known and/or did know, the likelihood of current and future deprivations of constitutionally protected rights to an education, to bodily integrity, to be secure and left alone, and to life was obvious.

201.     Given what the School District should have known and/or did know, the need for training and supervision concerning bullying prevention and response was also obvious.

202.     As trained educators, all officials and teachers in the School District should have been aware of effective bullying prevention strategies and appropriate responses to bullying incidents, given the widely published and widely publicized research on bullying prevention and response.

203.     Despite this widely published and widely publicized research, the Blue Springs School district failed to implement proven strategies to prevent or deter bullying in its schools.

204.     Despite this widely published and publicized research, the School District failed to properly train and supervise its employees and agents with regard to prevention of bullying, response to reports of bullying, and protection of children from known bullying.

205.     Despite the School District's actual and constructive knowledge of an ongoing pattern of bullying incidents and an ongoing pattern of improper responses to those incidents by teachers and administrators, as well as the existence of a dangerous bullying culture in the School District and at John Nowlin and Voy Spears, the School District failed to properly train and

39

supervise its employees and agents with regard to prevention of bullying, response to reports of bullying, and protection of children from known bullying.

206. As a result of the School District's failure to train and supervise its employees and agents, Brandon was deprived of his rights to a free public education, to bodily integrity, to be secure and be left alone, and to life, and his right to substantive due process under the Fourteenth Amendment to the United States Constitution.

207. The School District's failure to train and supervise its employees and agents constituted deliberate indifference to the deprivation of Brandon's rights to a public education, to bodily integrity, to be secure and be left alone, and to life and to substantive due process under the Fourteenth Amendment to the United States Constitution.

208. Brandon Myers has incurred necessary and reasonable medical expenses, suffered physical pain and mental anguish, experienced other economic hardships, and eventually lost his life, all as a direct and proximate result of Defendant's actions.

209. By reason of the foregoing, plaintiffs have been damaged and are entitled to fair and reasonable compensation.

210. Defendant's conduct which caused this damage showed complete indifference to and/or conscious disregard for the health and safety of Brandon Myers and other people similarly situated, justifying the imposition of punitive damages.

WHEREFORE, Plaintiffs pray for an award of damages against Defendant, in an amount to be determined by the jury, for punitive damages, together with interest and costs of suit and for such other relief as is just and proper.

40

**COUNT X**
**DENIAL OF SUBSTANTIVE DUE PROCESS THROUGH A POLICY, CUSTOM AND PRACTICE OF FAILING TO RESPOND TO OR PREVENT BULLYING IN ITS SCHOOLS (42 U.S.C. § 1983)**
**(Plaintiffs v. Blue Springs School District)**

211. Plaintiffs hereby adopt and incorporate the allegations set forth in paragraphs 1 through 210 above, as though fully set forth herein.

212. The School District, including the school board and the superintendents in the School District at the relevant times of the occurrences described in this petition, knew or should have known that there existed among administrators, counselors, and teachers a continuing, widespread, and persistent pattern of failing to respond appropriately to bullying incidents, including those incidents in which Brandon was the victim.

213. The School District, including the school board and the superintendents in the School District at the relevant times of the occurrences described in this petition, knew or should have known that there existed a continuing, widespread, and persistent pattern of administrators' failing to implement proven strategies to prevent bullying or to ensure appropriate responses to bullying incidents, including those in which Brandon was a victim.

214. The School District, including the school board, the superintendent, and the principals in the School District at the relevant times of the occurrences described in this petition, knew or should have known that such failures were causing its students, including Brandon, to suffer deprivations of their rights to a public education, to bodily integrity, to be secure and be left alone, to life, and substantive due process under the Fourteenth Amendment to the United States Constitution.

41

215. Nevertheless, the School District, including the school board, the superintendent, and the principals in the School District at the relevant times of the occurrences described in this petition, maintained a practice of inappropriate responses to known bullying incidents, a practice of rejecting the implementation of proven bullying prevention strategies, and a practice of allowing bullying incidents and a bullying culture to continue unchecked in the School District's schools.

216. The School District thereby exhibited a deliberate indifference to or tacit approval of the constitutional misconduct of its employees and a deliberate indifference to Brandon's and other students' rights to a public education, to bodily integrity, to life, to be secure and be left alone, and substantive due process under the Fourteenth Amendment to the United States Constitution.

217. Because the bullying continued unchecked and even increased as employees refused to come victims' aid and even punished victims for defending themselves, this policy and practice was the moving force behind the deprivation of Brandon's rights to a public education, to bodily integrity, to life, to be secure and be left alone, and substantive due process under the Fourteenth Amendment to the United States Constitution.

218. Brandon Myers has incurred necessary and reasonable medical expenses, suffered physical pain and mental anguish, experienced other economic hardships, and eventually lost his life, all as a direct and proximate result of Defendants' actions.

219. By reason of the foregoing, plaintiffs have been damaged and are entitled to fair and reasonable compensation.

220. Defendants' conduct which caused this damage showed complete indifference to and/or conscious disregard for the health and safety of Brandon Myers and other people similarly situated, justifying the imposition of punitive damages.

42

WHEREFORE, Plaintiffs pray for an award of damages against Defendants, in an amount to be determined by the jury, for punitive damages, together with interest and costs of suit and for such other relief as is just and proper.

**COUNT XI**
**AGGRAVATING CIRCUMSTANCES - PUNITIVE DAMAGES**
**(Plaintiffs v. All Defendants)**

221.    Plaintiffs hereby incorporates paragraphs 1 through 220 above as though fully set forth herein.

222.    Defendants committed one or more of the willful, wanton and malicious acts more fully set forth above which individually and/or cumulatively justify the submission of punitive damages in this case.

223.    Defendants knew or had information from which, in the exercise of ordinary care, should have known that such conduct, as more fully set forth above, created a high degree of probability of injury or death to Brandon Myers and others similarly situated.

224.    The willful, wanton and malicious acts of Defendants, as more fully set forth above, evidence Defendants showed complete indifference to and/or conscious disregard for the safety of Brandon Myers, and others similarly situated, justifying the submission of punitive damages in this case.

WHEREFORE, Plaintiffs prays for judgment against all Defendants, and for punitive damages in such an amount as will serve to punish and deter the defendant, and others similarly situated, from engaging in like conduct.

43

## DEMAND FOR JURY TRIAL OF ALL ISSUES

225.    Plaintiffs in the above-entitled cause demand a trial by jury.

Respectfully submitted,

HUMPHREY, FARRINGTON, & McCLAIN

DANIEL A. THOMAS          #52030
JONATHAN M. SOPER          #61204
221 W. Lexington, Suite 400
Independence, Missouri 64051
Telephone:    (816) 836-5050
Facsimile:    (816) 836-8966
ATTORNEYS FOR PLAINTIFFS

44